## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| HOWELL TRACTOR AND EQUIPMENT, LLC, an Illinois Corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CAUSE NO. 2:14-cv-302<br>) |
| ALLIANCE TANK SERVICE, LLC, an Oklahoma Corporation, | )<br>)<br>) |
| Defendant. | )<br>) |
| _____ | )<br>) |
| ALLIANCE TANK SERVICE, LLC, | )<br>) |
| Third-Party Plaintiff, | )<br>) |
| vs. | )<br>) |
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, | )<br>)<br>) |
| Third-Party Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on the: (1)Great American Insurance Company of New York's Motion for Summary Judgment, filed by Third-Party Defendant, Great American Insurance Company of New York, on August 14, 2017 (DE #61); (2) Motion for Summary Judgment, filed by Third-Party Plaintiff, Alliance Tank Service, LLC, on August 14, 2017 (DE #62); (3) Plaintiff Howell Tractor and Equipment, LLC's Motion for Summary Judgment, filed by Plaintiff,

Howell Tractor and Equipment, LLC, on August 14, 2017 (DE #65); (4) Great American Insurance Company of New York's Motion to Strike or Exclude Certain Opinions of Dr. William Warfel, filed by Third-Party Defendant, Great American Insurance Company of New York, on August 14, 2017 (DE #67); and (5) Plaintiff Howell Tractor and Equipment, LLC's Motion to Bar Third-Party Defendant, Great American Insurance Company of New York's Expert Witnesses Anthony Bond, Michael Smith, Frank Dues, Ben Glaser, Edward Kozlove, Tommie Beattie, Dave Wood, and Ron Williams, filed by Plaintiff, Howell Tractor and Equipment, LLC, on August 14, 2017 (DE #68).

For the reasons set forth below, the Motion for Summary Judgment filed by Plaintiff, Howell Tractor and Equipment, LLC (DE #65) is **GRANTED IN PART AND DENIED IN PART** - it is **GRANTED** on the issue of liability but **DENIED** as to damages because there are disputed questions of material fact for the fact finder with respect to whether damages for lost profits are recoverable (and if they are recoverable, what amount is appropriate) and whether Howell is entitled to attorneys' fees and costs.

This Court **HEREBY ORDERS** that the action on the third-party counterclaim is **STAYED** until after trial or resolution of the underlying action between Plaintiff Howell and Defendant Alliance, and until further order of the Court.

Due to the stay in the third-party action, the Motion for Summary Judgment filed by Third-Party Defendant Great American

Insurance Company of New York (DE #61) is **DENIED WITHOUT PREJUDICE WITH LEAVE TO REFILE**; the Motion for Summary Judgment filed by Third-Party Plaintiff, Alliance Tank Service, LLC (DE #62) is **DENIED WITHOUT PREJUDICE WITH LEAVE TO REFILE**; and Third-Party Defendant Great American Insurance's Motion to Strike or Exclude Certain Opinions of Dr. William Warfel (DE #67) is **DENIED WITHOUT PREJUDICE WITH LEAVE TO REFILE.**

Finally, Plaintiff Howell's Motion to Bar Third-Party Defendant Great American Insurance's Expert Witnesses (DE #68) is **GRANTED TO THE EXTENT** that Great American's experts will be barred from giving testimony in the underlying case between Plaintiff Howell and Defendant Alliance; however, this does not effect Great American Insurance's possible use of its own experts in the third-party action, when the third-party action is no longer stayed.

<u>BACKGROUND</u>

All of the controversy involved in this case began with a crane that got stuck in the mud. Under a Rental Equipment Agreement, Plaintiff, Howell Tractor and Equipment, LLC (hereinafter "Howell"), leased a crane to Defendant, Alliance Tank Service, LLC (hereinafter "Alliance"). The crane got stuck in the mud and while attempting to pull it out, Alliance concedes that it bent the boom of the crane.

Alliance returned the crane to Howell. After conferring with the crane's manufacturer, Tadano Mantis Corporation ("Mantis"),

Howell demanded in writing that the boom sections be replaced. Meanwhile, Alliance reported the claim to its insurer, third-party defendant Great American Insurance Company of New York (hereinafter "Great American"). Great American investigated the claims, consulted with several heavy equipment experts and repair shops, and concluded that the crane's boom sections could be repaired (instead of replaced).

Great American tendered payment for only the repair costs ($48,298.78), Alliance tendered payment of its deductible ($5,000), and Howell accepted the payment without waiving its rights to seek recovery from Alliance for the difference between the repair cost and replacement cost of the crane's boom. Howell had the boom sections of the crane replaced.

Howell then initiated this lawsuit against Alliance. Plaintiff's Complaint (DE #1) states a claim against Alliance for negligence for damaging the crane (Count I) and breach of contract (Count II) for failure to pay the full replacement damages ($142,645.55) and the monthly rent lost while the crane was being repaired ($105,000).

Alliance then filed a third-party complaint against Great American, which it amended several times. In the second amended third-party compliant (DE #45), Alliance states a claim against third-party defendant Great American for breach of contract (Count I) and bad faith (Count II).

Three motions for summary judgment have been filed. Third-Party Defendant Great American filed a motion for summary judgment, arguing that Alliance's claims against it are premature and unripe, the bad faith claim fails, and it does not owe anything for the lost rents. (DE ##61, 69.) In response, Howell argues that the breach of contract claim against Great American is ripe for adjudication, there is a genuine issue of material fact regarding whether Great American acted in bad faith, and damages for lost rent are recoverable under Alliance's bad-faith claim. (DE #75.) Third-Party Plaintiff, Alliance, filed a cross-motion for summary judgment against Great American, arguing that applicable OSHA regulations precluded repair of the boom. (DE #62.) In response, Great American contended it did not breach its contract and that the OSHA regulations cited by Alliance do not prohibit repair of the boom sections. (DE #76.) Additionally, Howell filed a motion for summary judgment, arguing Alliance breached the Equipment Rental Agreement when it failed to pay for the replacement of the boom sections, Great American's expert witnesses are irrelevant to the contractual cause of action between Howell and Alliance, and that it is also entitled to lost rental fees and attorneys' fees and costs. (DE #65, 66.) Alliance responds in opposition that there are genuine disputes as to whether Howell is entitled to lost rental income, the amount of lost rental income and other damages, whether eight to ten months of lost rental income was foreseeable,

5

and whether Howell failed to mitigate its damages. (DE #74.)

In addition to the three motions for summary judgment, there are two motions to bar expert witnesses. Plaintiff Howell filed a motion to bar Third-Party Defendant Great American's expert witnesses Anthony Bond, Michael Smith, Frank Dues, Ben Glaser, Edward Kozlove, Tommie Beattie, Dave Wood, and Ron Williams, arguing these expert opinions are irrelevant to the cause of action between Howell and Alliance. (DE #68.) In response, Great American argues that Howell does not have any standing to bar expert testimony in an action between Alliance and Great American. (DE #70.) Finally, Great American moves to strike the opinions of Alliance's expert, Dr. William Warfel, arguing Warfel offers improper legal conclusions and that his expert opinions were not timely disclosed. (DE #67.) In opposition, Alliance contends that Dr. Warfel is qualified, his opinions will assist the trier of fact, and the opinions expressed during his deposition were timely. (DE #71.)

All five motions are fully briefed and ready for adjudication.

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Where the parties file cross-motions for summary judgment, like Third-Party Plaintiff Alliance and Third-Party Defendant Great American, the Court must consider each motion and, even if the parties agree that no genuine issue of material fact exists, the Court can deny all motions if the parties do not establish their rights to judgment as a matter of law. *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002). As the Seventh Circuit has stated:

> It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment - more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment. The motions are treated separately.

*McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4(7th Cir. 2008) (abrogated on different grounds).

I. <u>Howell's Motion for Summary Judgment</u>

This Court finds it appropriate to start first with the Motion for Summary Judgment filed by Plaintiff, Howell, as it deals with the underlying rental agreement between Howell and Alliance. The parties agree that the Equipment Rental Agreement is controlling.

A. <u>Undisputed Facts</u>

Howell and Alliance entered into the Equipment Rental Agreement on October 16, 2013. Under that agreement, Howell leased to Alliance a 2008 Mantis 6010LP crane. The Agreement provides, in pertinent part, that the Renter "makes no alterations, additions,

modifications or improvements of or to Equipment without the prior written consent of Howell." (DE #77-1, Equipment Rental Agreement, ¶7(b)(6).) Additionally, it provides that the "RENTER SHALL BE RESPONSIBLE FOR FULL COST OF ALL REPAIRS AND MAINTENANCE OF OR WITH RESPECT TO THE EQUIPMENT, WHETHER ON ACCOUNT OF DAMAGE TO THE EQUIPMENT OR OTHERWISE." (DE #77-1, Equipment Rental Agreement, ¶7(b)(7) (emphasis in original).)

Alliance was using the crane in Michigan when it became stuck in the mud at the project site on November 27, 2013. Alliance attempted to free the crane by pulling it out of the mud using a chain, and bent the boom in the process. Alliance returned the crane to Howell in December 2013. (DE #74-3, Balitewicz Dep. at 19.)

Howell then performed measurements on the boom and found that the bottom had 9/16-inch deflection in the bottom of the boom, the left side had 1/4-inch deflection, the tip section had a bottom 3/8-inch deflection and left side had 3/16-inch deflection. (DE ##66-5, 66-7.) On February 12, 2014, James Lamb (a representative from Mantis) sent an e-mail to Gary Hammond at Howell stating the defects exceeded Mantis' published criteria, Mantis believed the tubes should be replaced, but:

> [i]t is of course the prerogative of the crane owner to pursue other independent courses of action but they should obtain written assurances from those attempting to straighten or otherwise 'repair' these components regarding liability for such repairs and subsequent long term boom

performance.

(DE #64-14; 2/12/2014 e-mail from Mantis to Howell.)  A few days later, on February 17, 2014, James Lamb from Mantis sent a letter to Gary Hammond and Tom Ellis of Howell informing Howell that the:

> deformations exceed the limits of acceptance criteria published by [Mantis], and as the Manufacturer we recommend the boom should be replaced. Under no circumstances should repair/straightening of the damaged boom tube sections be attempted and if attempted [Mantis] will accept no responsibility for the continued operation of structural competence of this equipment.

(DE #73-13, 2/17/14 letter from Mantis to Howell.)

Meanwhile, Alliance's insurer, Great American, hired Haag Engineering to also measure the boom sections.  Although Haag Engineering also recorded measurements that were outside of the scope of repair per Mantis' standards (DE #66-11 at 99-106, DE #66-10), Haag Engineering believed that the boom of the crane could be repaired.  (DE #66-11 at 102-03.)

Howell demanded, in writing, that the boom sections of the crane be replaced, not repaired.  (DE #66-13.)  The estimate for repairing the crane without replacing the boom sections was $53,298.78.  (DE #66-16.)  Howell repaired other parts of the crane sections and replaced the boom sections, at a cost of $142,645.55.  (DE #66-14 at 97-98; DE #66-17.)  Howell ordered replacements for the crane's three boom sections from the manufacturer, Mantis, on April 22, 2014.  (DE #75-2 at 38-39; Ex. 32 to Hammond Dep. (DE

10

#75-4).)

On April 11, 2014, Great American tendered $48,298.78 to Howell. Howell accepted the payment, but indicated that it was not accepting this as a final payment for damages suffered. (DE #66-18; DE #66-19 at 26.) On June 5, 2014, Alliance tendered $5,000 to Howell, which represented Alliance's deductible from its insurance policy with Great American. (DE #66-20; DE #66-2 at 65-66; DE #66-11 at 87.)

Howell received the replacement parts on June 24, 2014. (DE #75-4 at 97.) Afer receiving the parts, it took Howell a few months to repair the crane, and it was ready to be rented again on August 23, 2014. (*Id.* at 91-93; Ex. 12 to Hammond Dep; DE #77-16.)

B. <u>Relevance of Third-Party Expert Witnesses</u>

First, Howell argues that the expert witnesses designated by Third-Party Defendant, Great American, and expert rebuttal reports, are irrelevant to this contractual cause of action between Howell and Alliance. (DE #66 at 6-9.) Alliance does not address this argument, and Alliance does not rely upon Great American's experts in its response in opposition to the motion for summary judgment. Therefore, Alliance has essentially conceded Howell's argument, as typically "[f]ailure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

This Court agrees that, when dealing with this section of the

case, the action between Howell and Alliance, the expert witnesses designated by Third-Party Defendant Great American, are not relevant to this contract at issue in this portion of the case.[1]

Under *Daubert*, the Supreme Court fashioned a two-prong test of admissibility for evidence based on scientific knowledge. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 (1993). To be admissible, evidence must be both relevant and reliable. *Id.* at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (noting the objective of court's gatekeeping requirement is to ensure reliability and relevancy of expert testimony).

Even if an expert's testimony is deemed reliable, under the relevance prong, the testimony must also assist the trier of fact to understand the evidence in the sense that it is relevant to or

---

[1] There is a separate motion filed by Howell seeking to bar Great American's experts (DE #68), in which Howell also argues that the experts should be barred because they are immaterial and irrelevant to the issues involved in Howell's contract action against Alliance. In response, Great American contends this case also includes a third-party action between Alliance and Great American (based upon a different contract, the insurance policy issued by Great American to Alliance), and that Howell has no standing to bar expert testimony in an action between two other parties in the case. (DE #70.) Because this Court has found that Great American's experts are not relevant to the contractual case between Howell and Alliance, Alliance does not rely upon them in opposition or argue that this expert testimony is relevant to this portion of the case, and this Order stays the proceeding between third-party plaintiff and third-party defendant, this motion (DE #68) is **GRANTED** to the extent that Great American's experts shall be barred from giving testimony in the underlying case between Howell and Alliance. This ruling does not effect Great American Insurance's possible use of its own experts when the third-party action is no longer stayed.

"fits" the facts of the case. *Daubert*, 509 U.S. at 591; *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). In other words, the testimony must be such that the jury can apply it in a meaningful way to the facts at hand. This "fit" analysis essentially represents an inquiry similar to if not indistinguishable from the basic evidentiary inquiries into whether evidence is relevant and, if so, whether its probative value is nonetheless substantially outweighed by, among others, the danger of unfair prejudice and jury confusion. *See Daubert*, 509 U.S. at 595; *Ayers v. Robinson*, 887 F. Supp. 1049, 1058-59 (N.D. Ill. 1995). Testimony that is not relevant should be stricken. *Kumho Tire Co.*, 526 U.S. at 149.

In this underlying case, Great American experts are not needed and are irrelevant to the evaluation of the issues between Howell and Alliance (revolving around the breach of contract issue arising from a separate contract, the Equipment Rental Agreement). As such, those experts will be excluded from consideration in this underlying matter.

C.   OSHA Regulations

Howell next argues that it would have violated OSHA equipment modification regulations had it agreed to repair the crane's boom. (DE #66 at 15-16.) While Alliance does not respond to the OSHA argument (and has therefore waived argument on this issue), the Court is reluctant to address and rule on this issue without

13

argument from both sides and the Court acknowledges that this issue is contested in the third-party litigation. (*See* DE #75 at 12-15; DE #76 at 9-16.) Because a ruling on this issue is not necessary for this motion, and because it is not fully briefed by Howell and Alliance in this underlying action, the Court will defer from ruling on it at this point in the litigation.

D. <u>Damages</u>

The Agreement provides, in pertinent part, that the Renter "makes no alterations, additions, modifications or improvements of or to Equipment without the prior written consent of Howell." (DE #77-1, Equipment Rental Agreement, ¶7(b)(6).) Additionally, it provides that the "RENTER SHALL BE RESPONSIBLE FOR FULL COST OF ALL REPAIRS AND MAINTENANCE OF OR WITH RESPECT TO THE EQUIPMENT, WHETHER ON ACCOUNT OF DAMAGE TO THE EQUIPMENT OR OTHERWISE." (DE #77-1, Equipment Rental Agreement, ¶7(b)(7) (emphasis in original).)

Howell sets forth in its motion for summary judgment that it is undisputed that Howell and Alliance entered into a valid Equipment Rental Agreement; Alliance then damaged the boom of the crane; the Equipment Rental Agreement provided that Howell must give written consent to Alliance for any modifications; Howell did not give written consent to Alliance to repair the boom sections; Mantis recommended that the boom sections be replaced due to the deformities exceeding their standards, and Howell demanded in

writing that the damaged boom sections be replaced. (DE #66 at 14.) Alliance does not dispute any of these facts in its response.

Rather, Alliance argues that there are genuine disputes as to: (1) whether Howell is entitled to lost rental income under the terms of the Equipment Rental Agreement; (2) the amount of lost rental income and other damages to which Howell is entitled; (3) whether 8-10 months of lost income was foreseeable; and (4) whether Howell failed to mitigate its damages. (DE #74 at 4.)

The Equipment Rental Agreement established a monthly rental amount of $10,500 for the crane. Howell argues that Alliance is liable for $105,000 in lost rents to Howell for 10 months of lost profit because the crane did not become operational until August 23, 2014, after Howell had completed replacing the damaged boom sections. (DE #77 at 10.)

With regard to the claim for lost profits, the Equipment Rental Agreement provides in pertinent part as follows: "RENTER SHALL BE RESPONSIBLE FOR FULL COST OF ALL REPAIRS AND MAINTENANCE OF OR WITH RESPECT TO THE EQUIPMENT OR OTHERWISE (which if done or performed by Howell, shall be done at the cost and expense of Renter)." (DE #77-1 at ¶ 7(b)(6) (emphasis in original).) The Agreement additionally provides that "[r]ent shall not abate during the term hereof because renter's right to possession of Equipment has terminated or because Equipment has been repossessed, or because the Equipment has been lost, damaged or destroyed, or is

otherwise unusable by Renter, or for any other reason." (DE #77-1 at 6, ¶4.)

Yet, the contract also provides that "THE RENTAL TERM HEREUNDER SHALL COMMENCE ON THE DAY ON WHICH THE EQUIPMENT LEAVES HOWELL'S YARD FOR DELIVERY TO RENTER AND SHALL TERMINATE ON THE DAY ON WHICH THE EQUIPMENT IS RETURNED TO HOWELL'S YARD." (*Id.* at ¶2 (emphasis in original.) Thus, it seems that by the language of the Agreement, the rental term arguably ended when Alliance returned the crane to Howell's yard in early December, 2013. While Howell claims "Alliance does not assert that the Rental Equipment Agreement is ambiguous" (DE #77 at 10), Alliance does argue that according to the Agreement, the rental term terminated in early December, relieving Alliance from any further rent obligations.

It is well settled that under Indiana law, the goal of contract interpretation is to ascertain the intent of the parties. *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004). In the case of a written contract, the parties' intent is determined by looking first to the plain and ordinary meaning of the contract language. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997). If the contract language is clear and unambiguous, the court must interpret the contract without considering extrinsic evidence. *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753-54 (7th Cir. 2006) (applying Indiana law). However, if the

contract is ambiguous, the court may look to relevant extrinsic evidence in order to ascertain the intent of the parties. *Id.* at 753-54.

The two types of contract ambiguity are patent or latent. Patent ambiguity is apparent on the face of the instrument and arises from inherently contradictory or nonsensical language that either conveys no definite meaning or a confused meaning. *Bradley v. W. & S. Fin. Group*, No. 2:05-cv-39, 2005 WL 2709282, at *6-7 (N.D. Ind. Oct. 20, 2005). A latent ambiguity "arises not upon the face of the instrument by virtue of the words used, but emerges in attempting to apply those words in the manner directed in the instrument." *Hauck v. Second Nat'l Bank of Richmond*, 286 N.E.2d 852, 862 (Ind. Ct. App. 1972). Extrinsic evidence is admissible to explain the meaning of a latent ambiguity, but not to explain patent ambiguity. *Eckart v. Davis*, 631 N.E.2d 494, 497-98 (Ind. Ct. App. 1994). Patent ambiguity presents a pure question of law, while the jury must resolve latent ambiguity as a question of fact. *Felker v. Sw. Emergency Med. Serv., Inc.*, 521 F.Supp.2d 857, 867 (S.D. Ind. 2007). In other words, if a contract is latently ambiguous:

> and uncertain in its terms, we believe that the meaning of the contract may well need to be determined by extrinsic evidence. As such, its construction is a matter for the fact-finder. Rules of contract construction and extrinsic evidence need to be employed to determine and give effect to the parties' reasonable expectations. Under such circumstances, resolution of this issue

is inappropriate for summary judgment. *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind. 1995) (citations omitted).

In this case, the Court believes there is a latent ambiguity in the Agreement. It is only when trying to determine whether lost profits are allowable under the contract, and for what duration, that the issue arises with the provision "rent shall not abate during the term hereof" and the provision which states that the rental term terminates on the date the equipment is returned to Howell's yard. Extrinsic evidence will be needed to determine the parties' intent, and give effect to their reasonable expectations about whether Alliance and Howell agreed to lost profits in the event of damaging the crane, and for how long they expected and intended to pay the lost profits. This cannot be determined by the Court on summary judgment, but rather is delegated to the fact-finder.

If the fact finder determines that Howell is entitled to lost rental income for the damaged crane, it will also need to determine the amount of lost rents to which it is entitled. Alliance contends that Howell has not provided any documentation that the crane would have been rented in the nine months after it was damaged, that eight-ten months of lost rent was not foreseeable, and that Howell failed to mitigate its damages by delaying ordering the parts and not being diligent in the repair of the crane. These

are all questions that the fact finder will need to determine in this case.

Howell has also requested attorneys' fees and costs. In its memorandum in support of the motion for summary judgment, Howell requests "$257,684.86 plus additional attorneys' fees and costs incurred after June 30, 2017." (DE #66 at 16.) Howell does not articulate the source of its claim for attorneys fees (whether it be statutory or contractual), or give the Court any law whatsoever to support its claim that attorneys fees and costs are recoverable in this case. While the complaint requests reasonable attorneys' fees and costs, it also does not give a basis for entitlement. (DE #1 at 5.) In response, Alliance does not contest that Howell is entitled to recover attorneys fees and costs, but it does argue that Howell "provided no accounting for the attorney fees it seeks to recover" and attorney fees are required to be reasonable. (DE #74 at 7.) In its reply, Howell sets forth that it is entitled to $89,976.34 in attorneys' fees and $13,051.84 in costs, and attaches an affidavit of Donald Timothy McVey, setting forth the hourly charges for the work performed and number of hours each individual worked. (DE #77-13.) But again, in the reply, Howell cites no authority whatsoever, and gives no statutory or contractual basis for recovery of attorneys fees and costs in this breach of contract and negligence action. This Court will not do the parties research for them. *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999)("It is

not the responsibility of this court to make arguments for the parties.").

The American rule presumes that attorney fees are not ordinarily recoverable to a prevailing litigant as costs or damages, unless specifically allowed by statute, agreement between the parties, or narrow common law exception. *Travelers Cas. & Sur. Of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007); *see also Courter v. Fugitt*, 714 N.E.2d 1129, 1132 (Ind. Ct. App. 1999). Moreover, this "presumption that parties bear their own costs of litigation demands that fee shifting agreements be narrowly construed." *BKCAP, LLC v. Captec Franchise Trust 2000-1*, 701 F.Supp.2d 1030, 1039 (N.D. Ind. 2010). Because Howell has not pointed this Court to any contractual language or otherwise proved to the Court that attorneys' fees and costs are recoverable in this action, summary judgment on this issue is denied.

In sum, Howell's motion for summary judgment is granted on the issue of liability as Alliance does not contest that it entered into a valid Equipment Rental Agreement with Howell, Alliance thereafter damaged the boom of the crane, the Agreement provided that Howell must given written consent to Alliance for any modifications, and Howell demanded in writing that the damaged boom sections be replaced. However, there are disputed questions of material fact for the jury with respect to whether damages for lost profits are recoverable, and if they are recoverable by Howell,

what amount is appropriate.  Finally, because Howell did not prove
it was entitled to attorneys' fees and costs, this issue also
remains for the fact finder.

II.  Third-Parties Alliance and Great American's Cross Motions for
     Summary Judgment

Third-Party Plaintiff, Alliance, and Third-Party Defendant,
Great American, have also filed cross motions for summary judgment.
Great American argues in part that Alliance's breach of contract
claims against it are premature and not ripe for adjudication, and
should be dismissed.  The second amended complaint alleges that "in
the event that the Court or the trier of fact determines that
Howell Tractor is entitled to the cost of replacing the crane's
boom as damages, GAICNY will have breached its contract with
Alliance Tank by refusing to pay the amounts owed under the Policy
to indemnify Alliance Tank against Howell Tractor's claim."  (DE
#45 at 5, ¶18.)  The third-parties additionally dispute whether
Great American has a duty to reimburse the lost rental damages (if
lost rental damages are recoverable) and they dispute whether
attorneys' fees and costs are recoverable under Alliance's bad
faith claim against Great American.

While this Court has certainly seen declaratory judgment
indemnification actions dismissed as premature until an underlying
case is decided, this case is a little different as it involves a
separate breach of contract claim and bad faith claim that Alliance
has against Great American.  As such, dismissal does not seem to be

the appropriate route, especially since with this opinion and order, the Court has determined that in the underlying suit, Alliance breached its Agreement with Howell. Moreover, Federal Rule of Civil Procedure Rule 14 provides in pertinent part that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is *or may be* liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1) (emphasis added).

Yet, there are several things the fact finder must determine first in the case between Howell and Alliance before the action between Alliance and Great American can be entertained, including whether lost rental damages are recoverable (if yes, in what amount), and whether attorneys' fees and costs are recoverable (if yes, in what amount). Therefore, the third-party claims are not ripe until the underlying action is resolved.

The Court has the inherent power to stay proceedings before it. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). This Court believes the best way to handle this case is to stay the counterclaim proceedings. *See, e.g., United States v. City of Evansville*, No. 3:09-cv-128-WTL-WGH, 2011 WL 52467, at *2 (S.D. Ind. Jan. 6, 2011) (staying third-party complaint pending resolution of the underlying action). Whether Great American is liable to Alliance (and for what amount) will depend on: (1) how much Howell recovers from Alliance; and (2) whether Alliance is

entitled to indemnification under the insurance contract for those categories of damages and those amounts.

It is therefore ordered that the action on the third-party counterclaim is stayed until after the trial or resolution of the other issues in this action and until further order of the Court.

Because the third-party action has been stayed, this Court will deny without prejudice, with leave to refile at a later time: Third-Party Defendant Great American's Motion to Strike or Exclude Certain Opinions of Dr. William Warfel (DE #67); Third-Party Plaintiff Alliance's Motion for Summary Judgment (DE #62); and the Motion for Summary Judgment filed by Third-Party Defendant Great American Insurance (DE #61).

CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Plaintiff, Howell Tractor and Equipment, LLC (DE #65) is **GRANTED IN PART AND DENIED IN PART** - it is **GRANTED** on the issue of liability but **DENIED** as to damages because there are disputed questions of material fact for the fact finder with respect to whether damages for lost profits are recoverable (and if they are recoverable, what amount is appropriate) and whether Howell is entitled to attorneys' fees and costs.

This Court **HEREBY ORDERS** that the action on the third-party counterclaim is **STAYED** until after trial or resolution of the underlying action between Plaintiff Howell and Defendant Alliance,

and until further order of the Court.

Due to the stay in the third-party action, the Motion for Summary Judgment filed by Great American Insurance Company of New York (DE #61) is **DENIED WITHOUT PREJUDICE WITH LEAVE TO REFILE**; the Motion for Summary Judgment filed by Third-Party Plaintiff, Alliance Tank Service, LLC (DE #62) is **DENIED WITHOUT PREJUDICE WITH LEAVE TO REFILE**; and Great American's Motion to Strike or Exclude Certain Opinions of Dr. William Warfel (DE #67) is **DENIED WITHOUT PREJUDICE WITH LEAVE TO REFILE.**

Finally, Plaintiff Howell's Motion to Bar Third-Party Defendant Great American Insurance's Expert Witnesses (DE #68) is **GRANTED TO THE EXTENT** that Great American's experts will be barred from giving testimony in the underlying case between Plaintiff Howell and Defendant Alliance; however, this does not effect Great American Insurance's possible use of its own experts in the third-party action, when the third-party action is no longer stayed.


**DATED: March 20, 2018**          **/s/ RUDY LOZANO, Judge**
                                   **United States District Court**